IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION 29, AFL-CIO,<br><br>Plaintiff<br><br>v.<br><br>ENERGY HARBOR NUCLEAR CORPORATION,<br><br>Defendant | NO. 2:23-cv-761<br><br><br>**DEFENDANT ENERGY HARBOR NUCLEAR CORPORATION'S CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Local Rule 56 of the United States District Court for the Western District of Pennsylvania, Defendant Energy Harbor Nuclear Corporation ("Energy Harbor"), through counsel, respectfully submits the following Concise Statement of Material Facts setting forth the undisputed, material facts in support of its Motion for Summary Judgment:

1. International Brotherhood of Electrical Workers, Local Union 29, AFL-CIO (the "Union"), and Defendant, Energy Harbor Nuclear Corporation (the "Company") are parties to a collective bargaining agreement with a term from October 1, 2021, to September 30, 2024. (Dkt. No. 1-2, hereinafter the "CBA"). The CBA covers the terms and conditions of employment a bargaining unit of the company's employees working at the the Beaver Valley Power Station ("BVPS").

2. On August 18, 2022, the Union filed Grievance #22-2100. (Dkt. No. 1-3, hereinafter the "Grievance").

3. On January 1, 2023, the Union provided notice to the Company of the Union's intention to submit the Grievance to final and binding arbitration under the terms of Article IX of the CBA. (Dkt. No. 1, 1; Dkt. No. 5, 1).

4. The Grievance alleges that the Company's conduct failed "to satisfy the arbitration award FMCS Case No. 21022-04248" (the "Arbitration Award"). (Tr. of Rule 30(b)(6) Witness Joshua Ewing ("Ewing Tr."), 59:25-60:8; *id.* at Ex. I.)[1]

5. The issue resolved in the Arbitration Award was whether "the Company's actions relating to health care benefits for 2021 violate[d] the Framework Agreement[]. . . ." (Ewing Tr., 47:20-48:20; *id.* at Ex. F, 4.)

6. The Framework Agreement was a side agreement to the CBA that was in effect prior to ratification of the 2021-2024 CBA, which went into effect on October 1, 2014, and remained in effect by extension through September 30, 2021. (Ewing Tr., 56:4-9.)

7. The Arbitration Award's "Statement of the Issue" does not reference Article VIII of the CBA or any other provision of the CBA other than the Framework Agreement then in effect as a side agreement to the CBA. (Ewing Tr. at Ex. F, 4.)

8. The Arbitration Award's "Discussion and Decision" does not contain any reference to Article VIII, Section C(2)(a) of the CBA. (Ewing Tr. at Ex. F, *passim*.)

9. In the Order on the Union's Motion to Implement the Award in FMCS Case No. 21022-04248 (the "Arbitration Order"), the Arbitrator explicitly declined to address the Company's obligations relating to Union employees' health care benefits in 2022 because the issue for the arbitration was only for 2021. (Ewing Tr., 33:15-35:8; 60:10-17; *id.* at Ex. G.)

10. The Arbitration Award was issued on February 3, 2022. (Ewing Tr., 32:10-23; *id.* at Ex. F, 1.)

---

[1] The Ewing Tr. has not yet been submitted before the Court. At the Court's request, pertinent portions of the Ewing Tr., including those portions referenced herein and those portions to be referenced in Defendant's Motion for Summary Judgment, will be presented to the Court as an exhibit to the Index of Materials in Support of Defendant's Motion for Summary Judgment, which will be filed in advance of Defendant's dispositive motion filing.

11. The Arbitration Order was issued on June 3, 2022. (Ewing Tr., 33:5-21; *id.* at Ex. G, 1.)

12. The Grievance relates to the Company's conduct regarding health care benefits in 2022. (Ewing Tr., 59:18-60:8; *id.* at Ex. I.)

13. The Grievance does not relate to the Company's payment of health care benefits in 2021. (Ewing Tr., 59:18-60:8; 92:18-93:11; *id.* at Ex. I.)

14. Article XI of the CBA contains a zipper clause which provides that "all prior agreements, whether reduced to writing or not, including side agreements and white paper agreements" that are neither set forth in the CBA or identified in an appendix to the CBA are of no further force or effect as of the CBA's ratification date. (Ewing Tr. at Ex. D, 46.)

15. Pursuant to the CBA and following its ratification, the Parties met to identify and prepare an exhaustive list of all side agreements and white papers which would remain in effect during the term of the 2021-2024 CBA. (Ewing Tr., 14:7-19; 26:16-27:14.)

16. The Parties did not execute the 2021-2024 CBA until after they met to identify and prepare an exhaustive list of all side agreements and white papers which would remain in effect during the term of the 2021-2024 CBA. (Ewing Tr., 27:9-14.)

17. The Union's representatives executed the 2021-2024 CBA between July 5, 2022, and July 13, 2022. (Ewing Tr., 26:4-10; *id.* at Ex. D, 56.)

28. The Union signed the 2021-2024 CBA, and the Parties finalized the appendix of side agreements which the Parties agreed would remain in effect during the term of the 2021-2024 CBA, after both the Arbitration Award and the Arbitration Order had been issued by the Arbitrator. (Ewing Tr., 26:15-27:14; 28:1-29:3; *id.* at Ex. D, 56.)

19. The Arbitration Award is not referenced or incorporated in Article VIII or in any other section of the CBA. (Ewing Tr., 35:16-36:4; *id.* at Exs. D-E.)

20. The Arbitration Award is not included in the appendix of side agreements which the Parties agreed would remain in effect during the term of the 2021-2024 CBA. (Ewing Tr., 35:16-36:4; *id.* at Ex. E.)

21. The Arbitration Order is not referenced or incorporated in Article VIII or in any other section of the CBA. (Ewing Tr., 35:16-36:4; *id.* at Exs. D-E.)

22. The Arbitration Order is not included in the appendix of side agreements which the Parties agreed would remain in effect during the term of the 2021-2024 CBA. (Ewing Tr., 35:16-36:4; *id.* at Ex. D.)

23. Through the course of collective bargaining negotiations, the Union did not propose incorporating the Framework Agreement into the CBA. (Ewing Tr., 22:1-16; *id.* at Ex. C.)

24. The Framework is not referenced or incorporated in Article VIII or in any other section of the CBA. (Ewing Tr., 55:24-56:9; 65:16-23; *id.* at Exs. D-E.)

25. The Framework Agreement is not included in the appendix identifying side agreements which the Parties agreed would remain in effect during the term of the 2021-2024 CBA. (Ewing Tr., 28:1-30:9; *id.* at Ex. D.)

26. The Framework Agreement was extinguished as of October 1, 2021, by operation of the CBA. (Ewing Tr., 20:25-21:21; 29:21-30:9; *id.* at Exs. D-E.)

27. Article VIII of the CBA governs Union employees' entitlement to contributions in the event that the Union chooses to opt out of the Company's offered health insurance plan. Article VIII, § C.2.(a) requires only that the Company will make opt out

contributions to the Union, on behalf of an employee opting out, equal to the amount the Company contributes as employer premiums for employees participating in the Company-sponsored plan. (Ewing Tr., 54:7-13; *id.* at Ex. D, 39-40.) There is no dispute the Company did make contributions equal to the Company contributions for employees who remained in the health insurance plan. (Ewing Tr., 92:18-93:11.)

28. The Parties negotiated retaining the language of Article VIII, § C.2.(a) of the CBA. The language of that Section in the 2021-2024 CBA is identical to the language in the predecessor CBA. In addition, the Framework Agreement was extinguished. (Ewing Tr., 56:4-9.)

29. Article VIII of the CBA also addresses the impact on those contributions if the Company's premium contributions for participating employees increase from year to year. (Ewing Tr., 41:10-18; *id.* at Ex. D, 39-40.)

30. Neither Article VIII nor any other Article of the CBA addresses the impact on the Company's contributions where its premium contributions for participating employees decrease or do not change from one year to the next. (Ewing Tr., 41:20-43:21; *id.* at Ex. D, 39-40.)

31. Article IX of the CBA governs the grievance arbitration procedure, and permits arbitration only of those disputes which "arise . . . as to the interpretation, application, or operation of any provision of [the CBA]. . . ." (Ewing Tr. at Ex. D, 43.)

32. In response to the Union's request to submit Grievance #22-2100 to final and binding arbitration under the terms of Article IX of the CBA, and in light of the Company's position that the Grievance does not arise out of an alleged violation of any provision of the CBA and is therefore not subject to the Article IX grievance arbitration procedure, the

Company rejected the Union's request to process Grievance #22-2100 to arbitration. (Dkt. No. 5, ¶¶ 23-24.)

                                                  Respectfully submitted,

                                                  /s/W. Eric Baisden
                                                  W. Eric Baisden, (OH 0055763)
                                                  Eric M. Flagg (OH 0099724)
                                                  **BENESCH, FRIEDLANDER,**
                                                    **COPLAN & ARONOFF LLP**
                                                  127 Public Square, Suite 4900
                                                  Cleveland, Ohio 44114
                                                  Telephone:  216.363.4500
                                                  Facsimile:   216.363.4588
                                                  Email:  ebaisden@beneschlaw.com
                                                            eflagg@beneschlaw.com

                                                  *Attorneys for Defendant Energy Harbor*
                                                  *Nuclear Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing *Defendant Energy Harbor Nuclear Corporation's Concise Statement of Material Facts in Support of Its Motion for Summary Judgment* was filed electronically on March 22, 2024, in accordance with the Court's Electronic Filing Guidelines. Parties may access this filing through the Court's Filing System.

/s/ *W. Eric Baisden*
*One of the Attorneys for Defendant Energy Harbor Nuclear Corporation*