IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION 29, AFL-CIO, <br><br> Plaintiff, <br><br> v. <br><br> ENERGY HARBOR NUCLEAR CORPORATION, <br><br> Defendant. | Civil Action No. 23-761 <br><br> District Judge Cathy Bissoon <br> Magistrate Judge Maureen P. Kelly <br><br> Re: ECF Nos. 36, 40 |

## REPORT AND RECOMMENDATION

**I.      RECOMMENDATION**

Presently before the Court are the parties' cross-motions for summary judgment. For the following reasons, it is respectfully recommended that the Court grant the Motion for Summary Judgment filed on behalf of Plaintiff International Brotherhood of Electrical Workers, Local Union 29, AFL-CIO ("the Union"), ECF No. 36, and deny the Motion for Summary Judgment filed on behalf of Defendant Energy Harbor Nuclear Corporation ("Energy Harbor"), ECF No. 40.

**II.     REPORT**

    **A.     FACTUAL AND PROCEDURAL BACKGROUND**

Local 29 is a labor union that represents about 400 employees at the Beaver Valley Power Station ("BVPS"), located in Shippingsport, Beaver County, Pennsylvania. ECF No. 34 ¶¶ 1, 3. FirstEnergy Nuclear Operating Company ("FENOC") owned and operated BVPS until it entered bankruptcy protection in 2019. ECF No. 1 ¶ 16. In 2020, Energy Harbor emerged as the owner and operator of BVPS. Thus, Energy Harbor is an employer within the meaning of § 152(2) of the Labor Management Relations Act. 29 U.S.C. § 152(2). Id. ¶¶ 4, 16. In 2021, the Union and Energy

1

Harbor negotiated a successor Collective Bargaining Agreement ("CBA") with a term from October 1, 2021 to September 30, 2024. Id. ¶ 5; ECF No. 38-1.

Article VIII of the CBA provides for employee benefits, including health care benefits. ECF No. 38-1 at 41-44. As relevant to this action, the CBA permits Union to opt out of a company-provided health care plan, as follows.

> C.2.(a) In lieu of participating in the Company's Health Care Plan portion of the Flex Plan, the Bargaining unit, as a whole, shall have the option of participating in a Health Care Plan sponsored by the International Brotherhood of Electrical Workers Local Union 29 (the "Union Plan"). A third party administrator shall administer the Union Plan. The Company agrees to provide the Third Party Administrator the information required to perform its duties and access to Company facilities for the purpose of meeting with covered employees as required. The Company shall continue to administer COBRA for the Union Plan and contribute premium payments for each employee (at the appropriate coverage level) in the following amounts:
>
> Effective January 1, 2014, the Company's monthly contributions will be as follows:
> Single          $474.53
> EE & Ch         $754.25
> EE & Spouse     $916.58
> Family          $1,198.79
>
> Effective January 1, 2015 and each January 1 through the term of this Agreement, the Company's monthly contributions will be increased by the same percentage as any increase incurred by the Company's Health Care Plan from the previous year.
>
> *Note: In the event the Company's contribution for the Company's Health Care Plan is higher than the amount Local Union #29 members are receiving while participating in a Health Care Plan sponsored by the IBEW Local 29 (The "Union Plan), the members will receive the higher of the two.

ECF No. 38-1 at 41-42

It is undisputed that for calendar year 2022, the Union exercised its option under Article VIII.C.2.(a) to opt out of the Health Care Plan portion of Energy Harbor's Flexible Benefits Plan. ECF No. 5 ¶ 20. The Union alleges that it determined that Energy Harbor was not paying the correct amount of required contributions under Article VII.C.2(a), and on August 18, 2022, it filed

Grievance #22-2100 ("the Grievance") challenging the amount of the contributions. ECF No. 34 ¶¶ 6, 21.

> **STEP 3 GRIEVANCE**
> **I.B.E.W. LOCAL UNION 29**
> 2022-29-0026    No. 22-2100
>
> Company: Energy Harbor
>
> Location: Beaver Valley    Department: All BV Local 29 Memb
> Date of Occ. 01-01-22   and if OnGoing [X]    Date 2nd Step Mtg _____   Date 3rd Step Mtg 10/19/22
>
> Nature of Grievance:
> Energy Harbor failed to adjust the 2022 health care contributions by the percentage needed to satisy the arbitration award FMCS Case No. 21022-04248 as stated in the arbitrator's ruling. Union recommedation: Cease and desist, make the needed adjustments, make whole any lost compensations.
>
> Contract Ref: Subject but not limited to Article I.D and VIII.C.2.a
>
> Authorized Signature for Union: [signature]

ECF No. 38-3. The referenced arbitration award, FMCS Case No. 21022-04248, resolved a dispute stipulated by the parties as follows:

> Did the Company's actions relating to health care benefits for 2021 violate the Framework Agreements, and, if so, what should the remedy be.

ECF No. 38-6 at 4.

The parties were unable to informally resolve the Grievance and on January 1, 2023, the Union informed Energy Harbor that it intended to submit the Grievance to arbitration. ECF No. 34 ¶ 7.

Article IX.A of the CBA provides for mandatory grievance and arbitration procedures for "any dispute or difference" that may "arise between the Company and the Union or its members as to the interpretation, application, or operation of any provision of this Agreement, not

specifically settled in said Agreement …." ECF No. 38-1 at 45. If a grievance is not settled through informal means, "either party may refer the matter to Arbitration" by notifying the other party in writing. Id. (Article IX.F.1). Upon notification, the parties are directed to "endeavor to agree upon a settlement of the matter" or select an arbitrator. Id. Once an arbitrator is selected, the arbitrator is to hold a hearing, review the matter in dispute, and issue findings and conclusions in accordance with the provisions of the CBA. Id. (Article IX.F.2). The arbitrator's findings or conclusions are "final and binding upon the parties." Id.

Energy Harbor rejected the Union's request to process the Grievance to arbitration. ECF No. 34 ¶ 8; see also ECF No. 1-5. Energy Harbor contends that the Grievance relates to the FMCS arbitration award and the Framework Agreement and therefore "falls outside of the bounds [of] the parties' negotiated grievance and arbitration procedure in the CBA." Id. Thus, Energy Harbor contends that the Union "has not raised a dispute or difference related to the interpretation, application, or operation of Article VIII or any other provision of the CBA as they may relate to the 2022 health care benefits." Id.

The Union responded to Energy Harbor's refusal to arbitrate the matter and asserted that the FMCS arbitration award and Framework Agreement do not control the issue of arbitrability here. ECF No. 1-6. Rather, the Grievance invokes the applicable provision of the CBA (VIII.C.2.a) related to health care contributions and addresses Energy Harbor's failure to comply with the requirement that "the Company's monthly contributions will be increased by the same percentage as any increase incurred by the Company's Health Care Plan from the previous year." ECF No. 1-6 at 2. Thus, to the extent that the FMCS arbitration award increased Energy Harbor's contributions in the previous year (2021), the plain language of the CBA requires Energy Harbor's contributions

for 2022 to increase by the same percentage. Id. The Union contends that this issue "falls squarely" within the CBA and the arbitration provisions of Article IX. ECF No. 1-6 at 3.

Relying on "plain language of the CBA" and the Grievance, Energy Harbor reiterated its position that the Grievance is not arbitrable. ECF No. 1-7.

The Union initiated this action with the filing of a Complaint to Compel Arbitration on May 9, 2023. ECF No. 1. The parties conducted discovery. Now, at the summary judgment stage of the litigation, the parties agree that all material facts are undisputed and the issue may be resolved as a matter of law. ECF No. 34; ECF No. 37 at 10; ECF No. 41 at 12.

**B.    STANDARD OF REVIEW**

Summary judgment is properly entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "[A] fact is 'material' where 'its existence or nonexistence might impact the outcome of the suit under the applicable substantive law.'" Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019) (citations omitted). Further, "[a] dispute is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" Clews v. Cnty. of Schuylkill, 12 F.4th 353, 358 (3d Cir. 2021) (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating to the court that the undisputed evidence is not enough to support one or more essential elements of the non-moving party's

claim. Celotex, 477 U.S. at 322; see also Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004).

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)) (internal quotations omitted). In making this assessment, the court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts for the nonmoving party. Matreale v. New Jersey Dep't of Mil. & Veterans Affs., 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Philadelphia Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 requires the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322–23; Jakimas v. Hoffman La-Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

Finally, where cross-motions for summary judgment are pending, a district court "should consider cross-motions for summary judgment separately and apply the appropriate burden of production to each motion." Beenick v. LeFebvre, 684 F. App'x 200, 205 (3d Cir. 2017) (not precedential) (citing Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008)). "If upon review of cross motions for summary judgment [the court] find[s] no genuine dispute over material facts, then [the court] will order judgment to be entered in favor of the party deserving judgment in light of the law and undisputed facts." Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir.

1998) (citing Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d 139, 145–46 (3d Cir. 1998)).

**C.     DISCUSSION**

The Union commenced this action to compel arbitration pursuant to the Labor Management Relations Act, 29 U.S.C. § 141, et seq. and Section 301(a) of the Act, 29 U.S.C. § 185(a). Neither party questions that the CBA leaves the question of arbitrability to judicial determination. Thus, the Court may resolve whether Energy Harbor should be compelled to arbitrate the Union's Grievance. CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 171–72 (3d Cir. 2014) (citing Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297 n.5 (2010)). In resolving this issue, "judicial review is limited to two threshold questions: (1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement." Id.

In this case, there is no dispute that the CBA contains a valid arbitration agreement. See ECF No. 41 at 1. The Court therefore turns to the second question to determine whether the Grievance sets forth a dispute that falls within the scope of the parties' arbitration agreement.

"The venerable legal principles guiding the construction and enforcement of arbitration clauses in collective bargaining agreements are well established." Rite Aid of Pennsylvania, Inc. v. United Food and Com. Workers Union, Loc. 1776, 595 F.3d 128, 131 (3d Cir. 2010). First, there is "strong federal policy in favor of resolving labor disputes through arbitration." Id. Thus, "the inclusion of a broad arbitration clause in a collective bargaining agreement gives rise to a presumption of arbitrability which may be rebutted only by 'the most forceful evidence of a purpose to exclude the claim from arbitration.'" Id. (quoting AT&T Technologies, Inc. v.

Communications Workers of Am., 475 U.S. 643, 650 (1986), in turn quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582-83 (1960)). Further,

> in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious."

AT &T Techs., 475 U.S. at 649-50.

The United States Court of Appeals for the Third Circuit directs the analysis of whether a grievance falls within the scope of the arbitration agreement to three issues: "(1) [d]oes the present dispute come within the scope of the arbitration clause? (2) does any other provision of the contract expressly exclude this kind of dispute from arbitration, and (3) is there any other 'forceful evidence' indicating that the parties intended such an exclusion." E.M. Diagnostic Sys., Inc. v. Local 169, Int'l. Bhd. of Teamsters, 812 F.2d 91, 95 (3d Cir. 1987); see also Serv. Employees Int'l. Union Healthcare [SEIU] v. Heritage Valley Health Sys., 842 F. App'x 757, 760 (3d Cir. 2020) (citing AT&T Techs., *supra*, and United Steelworkers of Am. v. Lukens Steel Co., 969 F.2d 1468, 1475 (3d Cir. 1992)). This analysis is subject to the overriding principle "'that a court may submit to arbitration only those disputes that the parties have agreed to submit.'" SEIU v. Heritage Valley Health Sys., No. 2:19-393, 2020 WL 1049297, at *5 (W.D. Pa. Mar. 4, 2020) (quoting Granite Rock Co. v. Int'l Bhd. Of Teamsters, 561 U.S. 287, 299 (2010)). "And while the presumption favoring arbitration may put a thumb on the interpretive scale when a contract is ambiguous, 'a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt.'" Id.

(citing Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 55 (3d Cir. 2001)).

In this case, the CBA arbitration clause is broad – it provides that a party may compel arbitration of "any matter relating to the interpretation of this Agreement." ECF No. 38-1 at 45 (Article IX.A). Thus, there is a strong presumption in favor of arbitration unless there is "forceful evidence of a purpose to exclude the claim." AT&T Techs., 475 U.S. at 650. The Court finds none.

Energy Harbor contends that the Grievance does not relate to the interpretation of CBA, but to the application of a separate arbitration award that determined the amount of its required health care plan contributions in 2021. ECF No. 41 at 4-5. Energy Harbor further argues that the "stray" specific reference to Article VIII C.2.(a) does not pull the dispute within the scope of the broad arbitration agreement when the CBA does not otherwise incorporate the arbitration award or the Framework Agreement. Id. at 14-19. In support of its argument, Energy Harbor cites Cup v. Ampco Pittsburgh Corp., 903 F.3d 58 (3d Cir. 2018) and Rite Aid of Pennsylvania, Inc. v. United Food & Com. Workers Union, Loc. 1776, 595 F.3d 128 (3d Cir. 2010).

In Cup, the union filed a grievance challenging the elimination of retirees from the employer's healthcare plan. The union argued that the move violated both the CBA and a memorandum of agreement ("MOA") that predated the CBA and provided that current retirees would remain on an existing healthcare plan. Cup, 903 F.3d at 61. The union sought to arbitrate the matter, and the company rejected the request on the ground that the union no longer represented retirees. The Third Circuit concluded that the grievance was not within the scope of the arbitration provision because the CBA "states that it applies only to 'employees' – a term defined elsewhere to include 'production and maintenance employees at the Company's Avonmore plant *as of the date of this Agreement and thereafter.*'" Id. at 63 (emphasis in original). Those who retired before

the effective date of the CBA were not "employees" under the CBA, and the union could not compel arbitration of their benefits. Id. Further, the CBA's provision for "Medical Insurance" did not require arbitration of the terms of the MOA because there was no intent expressed in the CBA to incorporate the MOA. Id. at 64.

Here, however, Article VIII.C.2.(a) requires an annual contribution adjustment based on "*any* increase incurred by the Company's Health Care Plan from the previous year." ECF No. 38-1 at 42 (emphasis added). As stated in the Grievance, the Union seeks to resolve Energy Harbor's "failure to adjust the 2022 health care contributions." This dispute challenges Energy Harbor's compliance with the terms of the specifically referenced provision of the CBA — Article VIII.C.2.(a) – and the requirement that Energy Harbor's monthly contributions "be increased by the same percentage as any increase incurred by the Company's Health Care Plan from the previous year." ECF No. 1-4.

The opinion written by Third Circuit Judge Restrepo in SEIU v. Heritage Valley, 842 F. App'x 757, while not binding, is instructive. There the Court held that "the plain language" of a clause in the CBA related to staffing assignments made clear that the employer's conduct violated the CBA's terms and therefore qualified as a grievance under the arbitration provisions. Id. at 761. Here, "the plain language" of Article VIII.C.2(a) is unambiguous and renders the dispute over the percentage of required contributions arbitrable. The extrinsic evidence offered by Energy Harbor related to the reason for the Union's demanded increase is a question that goes to the merits, but does not control whether the Grievance is "within the zone of interests that have received protection in the collective bargaining agreement and one that the parties have agreed to arbitrate." Rite Aid, 595 F.3d at 132 (citation omitted).

10

Energy Harbor does not point to any provision of the CBA that excludes from arbitration a grievance that challenges the percentage of health plan contributions owed, nor does it present "forceful evidence" of a purpose to exclude the claim at issue. Thus, the court "need to look no further than the Agreement's writing to decide that the Union [is] entitled to summary judgment." SEIU v. Heritage Valley Health Sys., 842 F. App'x at 761.

**D.     CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the Court grant the Motion for Summary Judgment filed on behalf of Plaintiff International Brotherhood of Electrical Workers, Local Union 29, AFL-CIO, ECF No. 36, and deny the Motion for Summary Judgment filed on behalf of Defendant Energy Harbor Nuclear Corporation, ECF No. 40.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties may file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may respond to the objections within 14 days in accordance with Local Civil Rule 72.D.2.

Dated: November 13, 2024                    Respectfully submitted,

                                            /s/ Maureen P. Kelly
                                            MAUREEN P. KELLY
                                            UNITED STATES MAGISTRATE JUDGE

cc:     The Honorable Cathy Bissoon
        United States District Judge

        All counsel of record by Notice of Electronic Filing